IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SHAWN THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-CV-310-JHP-FHM |
| | ) | |
| BNSF RAILWAY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AND OPINION**

Before the Court are Defendant's Motion for Summary Judgment [Docket No. 35], Plaintiff's Response in Opposition [Docket No. 42], and Defendant's Reply to the Response [Docket No. 45]. For the reasons set forth below, Defendant's Motion is DENIED.

**BACKGROUND**

This lawsuit arises from an incident that occurred on May 12, 2005, while Plaintiff, Shawn Thomas, was working as a BNSF Railway Company ("BNSF") employee on the BNSF bridge in Neosho Missouri ("the Neosho Bridge"). Thomas and his crew arrived at the Neosho Bridge around 10:00 pm that night. At that time, it was dark and visibility was poor. The crew was attempting to assemble a train by having a locomotive push railroad cars through the nearby switch. In preparation for this manoeuver, Thomas intended to climb onto the last in a string of cars, the rear car, in order to provide warnings when the cars were pushed down the track. Thomas alleges that he was prevented from safely climbing onto the rear car due to the lack of grab irons or rungs on the side ladder of the car. Thomas decided to walk to the other side of the train to find a safe way to climb onto the car. As he stepped over the second rail onto the other side of the Neosho bridge, he

1

tripped on a thread bolt which was sticking up from the bridge. As a result, Thomas fell off the Neosho Bridge to the ground below.

Plaintiff has brought claims against BNSF pursuant to the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.*, alleging BNSF negligently and carelessly failed to provide a safe work place. Specifically, Thomas alleges that BNSF negligently and carelessly allowed obstructions to create a risk of tripping along the side of the bridge, negligently and carelessly failed to install a guard rail along the side of the bridge, and negligently and carelessly failed to provide artificial lighting to the bridge when it knew that switching activity would be performed by conductors on the bridge. In addition, Thomas brings a claim pursuant to the Safety Appliance Act ("SAA"), 49 U.S.C. § 20303, alleging BNSF violated its duty to him by failing to provide a car with a secure ladder, handhold, or grab iron on one of its sides.

BNSF has filed this Motion for Summary Judgment arguing that Thomas's negligence claims under the FELA are superceded by the Federal Railway Safety Act of 1970 ("FRSA"), 49 U.S.C. § 20101 *et seq*. Further, BNSF argues that Thomas can not prove a statutory violation of the SAA, and therefore, BNSF is entitled to judgment as a matter of law on the SAA claim. In response, Thomas states that although the FRSA may supercede the FELA on certain claims, it does not supercede the FELA in regard to the specific claims in this case. Thomas also alleges that there is a genuine issue of fact regarding which rail car was the car he attempted to board on the night in question, and accordingly, summary judgment is inappropriate on the SAA claim.

## **DISCUSSION**

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any

material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In making the summary judgment determination, the Court examines the factual record and draws reasonable inferences therefrom in the light most favorable to the non-moving party. *Simms v. Oklahoma*, 165 F.3d 1321, 1326 (10th Cir. 1999).

Under Rule 56(c), the moving party has the initial responsibility to show that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If this requirement is met by the moving party, the burden shifts to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of material fact regarding "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322.

If the non-moving party can prove the existence of a genuine issue of material fact, the motion is defeated. An issue is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if proof thereof might affect the outcome of the lawsuit as assessed from the controlling substantive law. *Id.* at 249.

**I. The FELA Negligence Claims**

    **A.  Interaction Between the FELA and the FRSA**

"In 1908, Congress enacted the Federal Employer's Liability Act, 45 U.S.C. § 51, *et seq*., to provide a remedy to railroad employees injured as a result of their employers' negligence." *Waymire v. Norfolk and Western Railway Co.*, 218 F.3d 773, 775 (6th Cir. 2000).   The "FELA imposes on railroads 'a general duty to provide a safe workplace.' " *Id*. (quoting *Kossman v. Northeast Illinois Regional Commuter Railroad Corp*., 211 F.3d 1031, 1035 (7th Cir. 2000).  The

FELA is a general negligence statute that "neither prohibits nor requires specific conduct by a railroad." *Id.* Congress enacted the FELA with intent of reducing injuries and deaths resulting from accidents on interstate railroads. *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 542 (1994). "Recognizing the physical dangers inherent in the operation of a railroad, Congress 'crafted a federal remedy that shifted part of the 'human overhead' of doing business from employees to their employers.' " *Grimes v. Norfolk Southern Ry. Co.*, 116 F.Supp.2d 995, 999 (N.D. Ind. 2000) (quoting *Gotshall*, 512 U.S. at 542). The FELA should be construed liberally to effectuate its purpose. *Id.*.

The FRSA was also enacted with the purpose of promoting railway safety. *Id.* In addition, the FRSA was passed for the purpose of "making laws, regulations, and orders related to railroad safety 'nationally uniform to the extent possible.' " *Id.* (quoting 49 U.S.C. § 20106). Unlike the FELA, the FRSA is more specific and "proscribes railroad conduct by empowering the Secretary of Transportation to implement comprehensive and detailed railroad safety regulations." *Waymire,* 218 F.3d at 775.

Several courts have addressed the issue of whether the FRSA supercedes the FELA.[1] In *Waymire v. Norfolk and Western Railway Co.*, the Seventh Circuit found that negligence claims brought under the FELA alleging excessive train speed and inadequate warning devices were superceded by the FRSA where the train's speed and warning devices complied with the FRSA. *Id.* In *Waymire,* a railroad company employee sued under the FELA alleging that unsafe train speed and inadequate warning devices caused a train-truck collision at a crossing. In finding the FELA claims

---

[1] Neither the parties' nor the Court's research has revealed any Tenth Circuit cases addressing the issue.

superceded by the FRSA, the *Waymire* Court relied heavily on the Supreme Court case *CTX Transportation Inc. v. Easterwood*, 507 U.S. 658 (1993). In *Easterwood* the Court held that state law claims for excessive train speed were preempted by the FRSA's broad preemption clause when trains are traveling below the maximum speed limit set forth in 49 C.F.R. § 213.9. *Id*. at 776. The FRSA's preemption clause "provides that states may regulate railroad safety 'until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement.' " *Id*. At 775 (quoting 49 U.S.C. § 20106). The Court in *Easterwood* found that the speed regulations promulgated by the Secretary of Transportation sufficiently "covered" the issue of train speed and preempted the state law claim. *Id*. at 775-776. Although the *Waymire* Court recognized that it was construing two Federal statutes, it found the *Easterwood* analysis of the FRSA's preemption of state law instructive and adopted its reasoning in finding the same claim brought under the FELA was superceded. *Id*. at 775-777. Similarly, the *Waymire* Court found the inadequate warning device claim was superceded because the railroad company had complied with the applicable regulations set under the FRSA. *Id.*

It appears the majority of courts that have reached the issue have followed the analysis used in *Waymire* to find that the FRSA superceded the FELA in regard to claims for excessive speed and inadequate warning devices. *See, e.g. Lane v. R.A. Sims*, *Jr. Inc*., 241 F.3d 439 (5th Cir. 2001); *Major v. CSX Transp.*, 278 F.Supp.2d 597 (D. Md. 2003); *Rice v. Cincinnati, New Orleans & Pacific Ry. Co.*, 955 F.Supp. 739 (E.D. Ky. 1997); *Thirkill v. J.B. Hunt Transp., Inc.*, 950 F.Supp. 1105 (N.D. Ala. 1996). There are a few courts, however, that have reached the opposite conclusion. *See Myers v. Illinois Cent. R. Co.*, 753 N.E.2d 560 (Ill.App. 2001) (disagreeing with *Waymire* and finding that plaintiff's negligence claim for excessive speed under the FELA was not superceded

by the FRSA); *Earwood v. Norfolk Southern Ry. Co.*, 845 F.Supp. 880, 885 (N.D. Ga., 1993) (holding that despite *Easterwood*, plaintiff's claims under the FELA based in part on allegations that the train was being operated at an unsafe speed were not precluded by the FRSA).

In *Grimes v. Norfolk Southern Ry. Co.*, 116 F.Supp.2d 995 (N.D. Ind. 2000), an Indiana district court addressed whether the FRSA superceded FELA negligence claims for failure to adequately inspect the track and failure to provide a safe walkway. In *Grimes*, the railroad company argued that both of the plaintiff's claims were precluded because it had complied with FRSA regulations about track inspection, track construction, and ballasting. *Grimes*, 116 F.Supp.2d at 1002. The court found the failure to inspect claim was not precluded because the applicable FRSA regulation only applied to track inspections *at* crossings and not to inspections *between* crossings, which is where the plaintiff claimed the railroad failed to adequately inspect. *Id*. Similarly, the court found that the FRSA regulation regarding track construction and ballasting was "directed at creating a safe roadbed for trains, not a safe walkway for railroad employees." *Id*. Accordingly, the railroad company's compliance with the regulation did not preclude plaintiff's FELA negligence claim for failing to provide a safe walkway. *Id*. In its analysis of the interaction between the FELA and the FRSA, the court noted that neither *Easterwood* nor *Waymire* indicate any judicial hostility toward the underlying purpose of the FELA-"reducing injuries and death resulting from accidents on interstate railroads." *Id.* at 999, 1003. In concluding its FELA/FRSA analysis, the court emphatically stated "[t]he Defendant NSRC has asked this Court to extend *Waymire* well beyond its holding to preclude a negligence claim under the FELA for any conduct by the railroad even remotely covered by a regulation enacted under FRSA. This Court declines the invitation to do so." *Id*. 1003.

### B. The FRSA "Regulation" Regarding Bridge Walkways

With the cases discussed above forming the framework for the Court's FELA/FRSA analysis, the next step is to look at the FRSA regulation which allegedly supercedes Thomas's FELA claims. BNSF argues that a series of statements issued by the Federal Railroad Administrator ("FRA") regarding walkways on railroad bridges precludes the negligence claims in this case. In 1977, the FRA announced that it was studying the need for a Federal regulation requiring walkways on railroad bridges and other similar structures and requested public comments as to the necessity, cost, and benefit of such a regulation. 41 Fed.Reg. 50302 (Nov. 15, 1976). In response, the FRA received many comments from Federal agencies, state agencies, individual railroads, and one railroad association. 42 Fed.Reg. 22184 (May 2, 1977). As to the issue of the necessity of a Federal regulation, "[s]everal commenters expressed the opinion that a rule requiring walkways on *all* railroad bridges . . . would not contribute to the safety of railroad employees." *Id.* (emphasis added). The FRA went on to state that railroad industry commenters explained that studies have shown a lack of a significant statistical correlation between employee injuries and the absence of walkways because "carriers have identified those structures that pose the greatest hazards and have voluntarily installed walkways in order to reduce those hazards." *Id.* On the issue of whether Federal regulation concerning walkways was appropriate, commenters stated that a nationwide regulation would not be effective due to "the wide variety of conditions that exists on railroads throughout the country." *Id.* at 22185. Instead, commenters recommended that walkways "should be addressed on a case-by-case basis rather than by issuance of a single uniform rule." *Id.*

Based on these comments, the FRA concluded "that the issuance of a Federal rule requiring walkways on railroad bridges, trestles, and similar structures cannot be justified at the present time."

*Id.* The FRA pointed to the large potential cost to the railroad companies, along with the lack of evidence that walkways would provide a measureable improvement to employee safety as justification for its decision. *Id.* Additionally, the FRA stated "if an employee safety problem does exist because of the lack of walkways in a particular structure, regulation by a State agency that is in a better position to assess the local need is the more appropriate response." *Id.*

The parties in this case have brought to the Court's attention two cases which have addressed whether the FRA's pronouncement has a preemptive effect on state law claims concerning bridge walkways. In *Norfolk & Western Ry. Co. v. Pubic Utilities Comm'n of Ohio*, 926 F.2d 567 (6th Cir. 1991), the Sixth Circuit held that a state law requiring walkways on all railroad bridges was preempted by the FRSA. The court found that the FRSA, through the 1977 FRA statement, had sufficiently "covered" that area of railroad safety, thus invoking the FRSA's broad preemption clause. *Norfolk & Western Ry. Co.,* 926 F.2d at 570. In striking down the state requirement of bridge walkways, the court relied on the doctrine of negative preemption which prohibits states from enacting regulation in areas where a Federal agency has determined that no regulation is appropriate. *Id.* According to the *Norfolk & Western Ry.Co.* Court, the FRA's express refusal to regulate bridge walkways prevents a state from requiring all railroad bridges to have walkways.

In *Kohn v. Burlington Northern and Santa Fe R.R.*, 77 P.3d 809 (Col. App. 2003), the Colorado Court of Appeals found that the FRSA did not preempt a state law negligence claim based on the lack of a walkway on a railroad bridge. In *Kohn*, the court asserted:

> In our view, the FRA's explanation [for the 1977 policy statement] is not inconsistent with a tort verdict premised on a jury's finding that a walkway should have been installed on this particular bridge. And the FRSA's generic concern for

8

uniformity does "not justify the displacement of state common-law remedies that compensate accident victims and their families an that serve the Act's more prominent objective, emphasized by its title, of promoting [railroad] safety."

*Kohn*, 77 P.3d at 813 (quoting *Sprietsma v. Mercury Marine*, 537 US 51,70 (2002))

### C. The FRSA Does Not Supercede Thomas's FELA Claims

It is important to note that the Court has been asked to construe the interaction between two Federal statutes. Thus, the Court is not addressing the issue of "preemption" because that term refers to the conflict between a Federal law and a state law. Accordingly, cases addressing the FRSA's preemption of state law causes of action may be helpful in the Court's analysis, but certainly are not dispositive. The Supreme Court has stated, "when two [federal] statutes are capable of co-existence, it is the duty of the of the courts, absent a clearly expressed congressional intent to the contrary, to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551 (1974). The Court finds that the FELA and the FRSA are capable of co-existence in regard to the negligence claims brought by Thomas in this case.

BNSF argues that all of Thomas's negligence claims are "negatively preempted/superceded" by the FRSA through the 1977 FRA statement declining to require walkways on all railroad bridges. In support of this position, BNSF cites *Norfolk & Western Ry. Co.* in which the Sixth Circuit found the FRA statement "covered" the bridge walkway area and precluded Ohio from requiring all railroad bridges in the state to have walkways. This Court agrees with the Sixth Circuit's determination that a state can not require all railroad bridges to have walkways. Uniform requirements of this nature are the exact regulation the FRA considered and expressly refused. In support of this decision, the FRA stated that a uniform rule was not an effective method for

addressing safety hazards caused by the need of walkways on certain bridges. It naturally follows that a state would be preempted from promulgating the same uniform requirement that the FRA considered and rejected. However, as to BNSF's argument that *Norfolk & Western Ry. Co.* can be read to preclude any negligence action that relates to the need of a walkway on a particular bridge, the Court disagrees.

A careful analysis of the FRA statement, including the summary of the comments received, reveals that the only regulation considered and rejection by the FRA was a uniform requirement for walkways on all bridges. In fact, the FRA recognized that some bridges do require walkways in order to protect the safety of railroad employees. The FRA decided that states were in a better position to assess the local need for walkways on specific railroad bridges. Additionally, the summary of the comments received indicate that the FRA also considered the fact that the individual railroads which have the greatest need for walkways often recognize the safety hazard and voluntarily install walkways in order to reduce the hazard. Therefore, the Court finds that the FRA statement does not bar negligence claims, such as Thomas's, which are based on allegations that a particular bridge should have installed a walkway.

Furthermore, the FRSA regulation at issue in this case is substantially different from the regulations involved in excessive train speed and warning device cases such as *Waymire*. The Secretary of Transportation has set forth specific train speed regulations under the FRSA found in 49 C.F.R. § 213.9. These regulations list maximum operating speeds for both freight and passenger trains traveling over six different types of track. Similarly, the Secretary has mandated that warning devices at track crossings must include automatic gates and flashing light signals when any one of six specific conditions exist. 23 C.F.R. § 646.214(b)(3). In addition, for crossings not involving one

of the six conditions, the Secretary requires the warning devices be approved by the Federal Highway Administrator. *See Waymire*, 218 F.3d at 776. The matter before the Court does not involve an area of railroad safety where the Secretary has promulgated detailed and comprehensive safety regulations such as these. Rather, the Court is presented with the opposite scenario, in which the FRA specifically declined to issue minimum safety requirements regarding bridge walkways. The FRA specifically left the issue in the hands of state agencies and the individual railroad companies. Unlike the situation presented in *Waymire*, the FRSA has not established comprehensive safety regulations relating to bridge walkways to the extent that federal common law and statutes on the issue are necessarily displaced. *See Waymire*, 218 F.3d at 777. Accordingly, the Court finds that a negligence claim under the FELA relating to bridge walkways can stand in light of the 1977 FRA statement.

The FRSA does not supercede FELA negligence claims based on the failure to install a bridge walkway or claims relating to the composition or adequacy of an installed walkway. To hold that all negligence claims regarding bridge walkways were superceded would be providing railroad companies with a broad liability shield. Such a result can not be reconciled with the purpose of either the FELA or the FRSA which is the *promotion* of railway safety.. Similar to the defendant's in *Grimes*, BNSF has asked the Court to stretch *Waymire* and *Norfolk & Western Ry. Co.* well beyond their respective holdings and, like the court in *Grimes*, this Court declines the invitation to do so.

**II. The SAA Claim**

A genuine issue of material fact exists as to which rail car Thomas was attempting to board on the night in question. BNSF asserts that the rear car, thus the one Thomas was attempting to ride,

was Car No. NS194775 ("Car 75"). BNSF further asserts that Car 75 was equipped with the proper grab handles. Thomas, however, alleges that Car 75 was not the rear car that he attempted to ride on the night of the accident. When shown pictures of Car 75 during his deposition, Thomas stated under oath that the pictures did not depict the rear car which he attempted to ride. In further support of this argument, Thomas relies on the injury report prepared by Carter Tuggle, the Manager of Safety for BNSF. Tuggle's "Supervisor's Report of Injury" indicates that Thomas was injured when attempting to ride Car No. NS194774 ("Car 74"). Although Tuggle later claimed that he was able to identify the car in question as Car 75 by reviewing computer printouts which listed the order of the cars, there is enough evidence to create a genuine issue of fact as to which car Thomas actually attempted to ride.

BNSF further argues that regardless of which car Thomas attempted to ride, the issue is not relevant because Car 74 was also equipped with the required handholds and grab irons. BNSF alleges that a photograph of Car 74 taken the day after the incident shows that Car 74 had all the required hand holds and grab irons. A picture of Car 74 taken the day *after* the accident, however, does not conclusively prove that the car was properly equipped on the day *of* the incident. Further, Thomas has stated under oath that the car he attempted to ride did not have the proper handholds. Consequently, there is a disputed question of fact which precludes the Court from granting summary judgment.

## CONCLUSION

For the reasons set forth herein, BNSF's Motion for Summary Judgment is DENIED.

IT IS SO ORDERED.

James H. Payne
United States District Judge
Northern District of Oklahoma